# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

SHAWN M. RUTHERFORD,　　　　　)
　　　　　　　　　　　　　　　　　)
　　　　　Plaintiff,　　　　　　　　)
　　　　　　　　　　　　　　　　　)　　　No. 10 C 8016
vs.　　　　　　　　　　　　　　　　)
　　　　　　　　　　　　　　　　　)　　　Magistrate Judge Rowland
MICHAEL J. ASTRUE, Commissioner　)
of Social Security,　　　　　　　　)
　　　　　　　　　　　　　　　　　)
　　　　　Defendant.　　　　　　　　)

## MEMORANDUM OPINION AND ORDER

Plaintiff, Shawn Rutherford, brings this action pursuant to 42 U.S.C. § 405(g), seeking judicial review of the Social Security Commissioner's denial of his application for disability insurance benefits. For the reasons set forth below, the Court remands this case for further proceedings consistent with this opinion.

## I. Procedural History

On March 13, 2007, at age 21, Mr. Rutherford filed an application for disability insurance benefits and supplemental security income, and child's insurance benefits[1]. (R. 186-89). Mr. Rutherford alleged disability based on bi-polar disorder, depression, attention deficit disorder, substance abuse-dependency in remission, and hearing impairment. His claims were denied on July 26, 2007 and then again upon reconsideration on December 14, 2007. (R. 65-72). Mr. Rutherford

---

[1] Because Mr. Rutherford does argue that the Commissioner erred in denying his application for child's insurance benefits, the Court does not address that element of his application. The regulations governing the determination of disability for disability insurance benefits are found at 20 C.F.R. § 404.1501 *et seq.* The supplemental security income regulations are virtually identical to the disability insurance benefits regulations and are set forth at 20 C.F.R. § 416.901 *et seq.*

filed a written request for a hearing, and on October 15, 2009, an Administrative Law Judge ("ALJ") conducted a hearing via video conference. Mr. Rutherford was present and was represented by counsel. Also present were Angel Randolph, the mother of Mr. Rutherford's child; Dr. James M. McKenna, an impartial medical expert; and James J. Radke, and impartial vocational expert. On November 18, 2009, the ALJ issued a written opinion, finding that Mr. Rutherford was not "disabled" under the Social Security Act. (R. 19). Mr. Rutherford then requested Appeals Council review, but the request was denied, rendering the ALJ's decision final. (R. 85). Mr. Rutherford then requested judicial review, for which this Court has jurisdiction pursuant to 42 U.S.C. § 405(g). Pursuant to the consent of the parties and 28 U.S.C. § 636(c), the case was reassigned to Magistrate Judge Nolan on July 8, 2011 for all further proceedings, including entry of final judgment. (Dkt. 18). Upon Judge Nolan's retirement from the bench, the case was reassigned to Magistrate Judge Rowland on October 1, 2012. (Dkt. 30).

## II. Summary of Administrative Record

Mr. Rutherford was born on August 31, 1985. (R. 462). By all accounts, he had a difficult childhood. Mr. Rutherford's father suffered from depression, was at-times suicidal, and was also HIV-positive. (R. 419). Mr. Rutherford's mother suffered from Lupus and was constantly in pain. As a student, Mr. Rutherford was diagnosed with an unspecified learning disability and was in special education classes. He dropped out of school in the ninth grade. (R. 227). When asked why he dropped out, Mr. Rutherford stated "I couldn't handle it. It was too much for me."

(R. 31). Mr. Rutherford has had many run-ins with the law; he reports that he has been arrested "probably 20 times." (R. 468).

At the age of eleven, Mr. Rutherford started using drugs. (R. 34). He started with marijuana and drinking and later moved on to other drugs, including cocaine and heroin. (R. 382-83). Mr. Rutherford reported in a December 12, 2005 substance abuse assessment that he struggles the most with his addiction to heroin, and has made hundreds of unsuccessful attempts to stop using. (R. 383). Substance abuse counseling appears to have helped Mr. Rutherford overcome his addiction; records indicate that he has been sober since December 27, 2005. (R. 34), and his mother testified that he regularly attends AA meetings (R. 257).

As far as employment history, Mr. Rutherford has worked a number of short term, low-skill jobs since dropping out of school: sorter at a battery factory; corn detasseler at an agriculture company; dishwasher; landfill laborer; line worker at a plexiglas factory; line worker at a food factory; line worker at a steel plant; pig handler at a pig farm; punch press and drill press operator at a garage parts factory. The highest wage he ever earned was $9.00 per hour. (R. 220-21). He has not worked since November 2006. (R. 221).

On December 10, 2006, Mr. Rutherford was struck in the head with a baseball bat during an altercation. He was airlifted to the trauma center at Saint Anthony Medical Center, where he was treated for a skull fracture. (R. 301, 442-47). Since then, Mr. Rutherford has received treatment for medical issues stemming from the assault, including loss of hearing, tinnitus (ringing in the ear), memory

loss, frequent headaches, blurred vision, and occasional imbalance. (R. 297, 298, 369, 371). An audiologist testing report confirms that Mr. Rutherford has "severe nearly total hearing loss in the right ear" as well as "constant tinnitus in his right ear." (R. 369).

In his application for social security benefits, Mr. Rutherford states that, since his injury, he has experienced significant problems with memory. He sometimes forgets to bathe. (R. 246). He loses his wallet and keys "all the time." (R. 246). He needs help remembering to take his medication. (R. 246). He also states that he generally keeps to himself and is afraid to be around other people. (R. 247). As far as house work and domestic responsibilities, Mr. Rutherford states that he lives with his sister and her family. (R. 245). He does not prepare his own meals, but he tries to clean up after himself every day. (R. 245). He does his own shopping, but likes to have his mother accompany him because he forgets things when he is on his own. (R. 245). Mr. Rutherford states: "I block everybody out and everything. I'm very depressed all the time. I have mood swings really badly. I feel like my life has gone nowhere. There's nothing to look forward to." (R. 36).

Mr. Rutherford's mother testified during the October 15, 2009 hearing. She stated that Mr. Rutherford mostly stays home during the day watching television. (R. 257). She testified that he used to spend time with friends – playing sports and fishing – but that he no longer has friends. (R. 261). She stated that he has trouble controlling his temper, has mood swings, and gets angry very quickly. (R. 262).

Angel Randolph, the mother of Mr. Rutherford's minor daughter, also testified. She stated that Mr. Rutherford does not like to go anywhere or be around people other than his family. (R. 45). She stated that, when they are out in public, Mr. Rutherford feels like he is being watched and will tell her "those people keep looking at me." (R. 49). She stated that when he is depressed, "he bites his fingers because his anxiety is so bad, and they will bleed because he bites them." (R. 46). She stated that, although she sees him about every day, she cannot leave their daughter alone with him because he is so absent-minded and forgetful. (R. 47). She stated that she has to remind him to bathe and take his medication. (R. 48).

In addition to the above evidence, the ALJ also considered records from the Sinnissippi Center where Mr. Rutherford received psychiatric treatment from May 2007 to August 2008. Those records show that Mr. Rutherford was treated for anxiety, self-cutting, panic attacks, audio hallucinations, and paranoia. (R. 514-25). He was prescribed several medications, but never participated in any lasting therapy. Following Mr. Rutherford's application for social security benefits, his Sinnissippi Center psychiatrist, Thomas Dennison, completed a residual functional capacity assessment for review by the social security administration. In that assessment, Dr. Dennison opined that Mr. Rutherford is "Markedly Limited" or "Moderately Limited" in twelve of the 20 categories listed. (R. 527). Dr. Dennison noted "Marked" limitation in the following categories:

- The ability to maintain attention and concentration for extended periods;
- The ability to complete a normal workday and workweek without interruptions from psychologically based symptoms and to perform

at a constant pace without an unreasonable number and length or rest periods;

- The ability to accept instructions and respond appropriately to criticism from supervisors; and

- The ability to get along with coworkers or peers without distracting them or exhibiting behavioral extremes.

(R. 527-28).

The ALJ also considered physical and psychological evaluations prepared by the Illinois Department of Disability Determination Services ("DDS"). (R. 485-506). Those evaluations were prepared on the basis of the medical records on file with the Social Security Administration. The DDS evaluators did not consult with Mr. Rutherford in person. The DDS's physical residual functional capacity assessment concludes that Mr. Rutherford is physically capable of performing medium work. (R. 499-506). The DDS's psychiatric evaluation (referred to as a "psychiatric review technique") evaluated Mr. Rutherford's condition under the following listings: 12.02 Organic Mental Disorders, 12.08 Personality Disorders, and 12.09 Substance Addiction Disorders. (R. 485). In assessing those listings' "B" criteria, the evaluator concluded that Mr. Rutherford experienced only "Mild" functional limitations in the following categories: (1) Restriction of Activities of Daily Living; (2) Difficulties in Maintaining Social Functioning; and (3) Difficulties in Maintaining Concentration, Persistence, or Pace. (R. 495). In assessing the "C" criteria, the evaluator found that none of the "C" criteria[2] were present.

_____

[2] 1. Repeated episodes of decompensation, each of extended duration; or 2. A residual disease process that has resulted in such marginal adjustment that even a minimal increase in mental demands or change in the environment would be predicted to cause the

The ALJ also considered what is known as a "consultative evaluation" prepared by Dr. John L. Peggau at the request of the Social Security Administration. (R. 467-472). Dr. Peggau spent approximately 95 minutes reviewing the medical records, evaluating Mr. Rutherford, and preparing his report. (R. 472). He concluded that Mr. Rutherford has a full-scale I.Q. score of 86, which is at the 18 percentile and in the upper portion of the low/average range. (R. 471). Dr. Peggau also assigned Mr. Rutherford a GAF (Global Assessment of Functioning[3]) score of 64. (R. 642). A score of 64 indicates the following: "Some mild symptoms (e.g., depressed mood and mild insomnia) OR some difficulty in social, occupational, or school functioning (e.g., occasional truancy, or theft within the household), but generally functioning pretty well, has some meaningful interpersonal relationships." American Psychiatric Association, *Diagnostic and Statistical Manual of Mental Disorders* 34 (4th ed. Text Rev. 2000).

In addition to the psychological consultative evaluation, the ALJ also considered hearing testimony from Dr. James M. McKenna, an impartial medical expert. Dr. McKenna provided almost no testimony about the nature of Mr. Rutherford's mental health disorders. (R. 58-60). He testified only that Mr. Rutherford's traumatic brain injury could, theoretically, have worsened Mr. Rutherford's psychiatric problems, but that he could not say for sure because "you

---

individual to decompensate; or 3. Current history of 1 or more years' inability to function outside a highly supportive living arrangement, with an indication of continued need for such an arrangement.

[3] GAF scores are used by clinicians to gauge an individual's overall level of functioning and his ability to carry out activities of daily living.

really need a specific, kind of quantitative psych evaluation. There's a specific neuro evaluation where they do really detailed quantitative assessments, and anybody who's had a closed-head injury like this and cannot function well should have it." (R. 58).

Finally, the ALJ considered the opinion of James J. Radke, and impartial vocational expert. Mr. Radke testified that – given Mr. Rutherford's age, education, work experience, and residual functional capacity – he would be able to perform the requirements of representative occupations such as food preparers; hand packers; general office workers; and mail clerks. (R. 60-63).

## III. Standard of Review

The standard for review of an appeal from the Social Security Administration denying disability benefits is well established. To establish a "disability" under the Social Security Act, a claimant must show an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment, which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 423(d)(1)(A). A claimant must demonstrate that his impairments prevent him from performing not only past work, but also any other work that exists in significant numbers in the national economy. *See* 42 U.S.C. § 423(d)(2)(A).

The regulations under the Social Security Act set forth a five-step process to determine whether a person is disabled. 20 C.F.R. § 404.1520(a)(4). Under these regulations, an ALJ must consider (1) whether the claimant presently has

substantial, gainful employment; (2) whether the claimant's alleged impairment or combination of alleged impairments is severe; (3) whether the claimant's impairment(s) meet(s) or equal(s) the specific impairments that are listed in the appendix to the regulations as severe enough to preclude gainful employment; (4) whether the claimant is unable to perform his or her past relevant work; and (5) whether the claimant is unable to perform any other work that exists in significant numbers in the national economy. *See* 20 C.F.R. § 404.1520(a)(4); 20 C.F.R. § 404.1520(b)-(f); *see also Young v. Sec'y of Health and Human Serv.*, 957 F.2d 386, 389 (7th Cir. 1992).

A finding of disability requires an affirmative answer at either Step 3 or Step 5. *See* 20 C.F.R. § 404.1520(a)(4). A negative answer at any step other than Step 3 precludes a finding that the claimant is disabled. *Young,* 957 F.2d at 388. The claimant bears the burden of proof at Steps 1-4. In cases of severe impairment, the ALJ's analysis typically involves an evaluation of the claimant's residual functional capacity ("RFC") to perform past relevant work. *See* 20 C.F.R. § 404.1520(e). This RFC is used for purposes of Step 4 to determine whether the claimant may work in his or her previous occupations. *Id.*

At Step 5, the burden shifts to the Commissioner, who must "provid[e] evidence showing that other work exists in significant numbers in the national economy that [the claimant] can do, given [his] residual functional capacity and vocational factors." 20 C.F.R. § 404.1560(c)(2). If a claimant's RFC allows him to

perform jobs that exist in significant numbers in the national economy, then the claimant is not disabled. 20 C.F.R. § 404.1520(g)(1).

In reviewing the ALJ's decision, courts may not decide facts anew, reweigh evidence, or substitute their judgment for the articulated judgment of the ALJ. *Herron v. Shalala,* 19 F.3d 329, 333 (7th Cir. 1994). The reviewing court will uphold the Commissioner's decision if it is supported by "substantial evidence," and is free of legal error. 42 U.S.C. § 405(g) (2004); *Steele v. Barnhart,* 290 F.3d 936, 940 (7th Cir. 2002). Substantial evidence means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Dray v. R.R. Retirement Bd.,* 10 F.3d 1306, 1310 (7th Cir. 1993) (quoting *Richardson v. Perales,* 402 U.S. 389, 401 (1971)). If conflicting evidence would allow reasonable minds to differ, the responsibility to determine disability belongs to the Commissioner (and ALJ, by extension), not the courts. *See Heir v. Sullivan,* 912 F.2d 178, 181 (7th Cir. 1990); *see also Stuckey v. Sullivan,* 881 F.2d 506, 509 (7th Cir. 1989) (the ALJ has the authority to assess medical evidence and give greater weight to evidence that the ALJ finds more credible).

However, an ALJ is not entitled to unlimited judicial deference. An ALJ must "build an accurate and logical bridge from the evidence to [his or] her conclusion," *Dixon v. Massanari,* 270 F.3d 1171, 1176 (7th Cir. 2001), and "must confront the evidence that does not support his [or her] conclusion and explain why it was rejected." *Indoranto v. Barnhart,* 374 F.3d 470, 474 (7th Cir. 2004). The ALJ must consider all relevant evidence, and may not choose to disregard certain evidence or

discuss only the evidence that favors his or her decision. *See Herron,* 19 F.3d at 334. Although the ALJ need not evaluate in writing every piece of evidence in the record, the ALJ must state the reasons he or she accepted or rejected "entire lines of evidence." *Id.* at 333; *see also Young,* 957 F.2d at 393 (in order for there to be a meaningful appellate review, the ALJ must articulate a reason for rejecting evidence "within reasonable limits"). The written decision must include specific reasons that explain the ALJ's decision, so that the reviewing court can ultimately assess whether the determination was supported by substantial evidence or was "patently wrong." *Zurawski v. Halter,* 245 F.3d 881, 887 (7th Cir. 2001) (quoting *Powers v. Apfel,* 207 F.3d 431, 435 (7th Cir. 2000)).

## IV. Discussion

Mr. Rutherford raises four arguments in support for his request for reversal and remand: (A) the ALJ erred by failing to conduct an inquiry (pursuant to 404.1535) into whether Mr. Rutherford's drug addiction or alcoholism is a contributing factor material to the determination of disability; (B) the ALJ committed multiple errors in concluding that Mr. Rutherford does not have an impairment or a combination of impairments that meets or medically equals one of the listed impairments; (C) the ALJ's credibility determination was patently wrong; and (D) the ALJ's RFC determination was erroneous.

The Court finds that the ALJ erred in (1) rejecting Mr. Rutherford's treating physician's opinion without sufficient explanation, and (2) failing to conduct an inquiry (pursuant to 404.1535) as to whether Mr. Rutherford's drug addiction or

alcoholism was a contributing factor material to the determination of disability. Because the errors are closely related, the Court will address them together.

Mr. Rutherford's treating physician, Dr. Dennison, opined that Mr. Rutherford was markedly limited in several areas of work-related functioning. (R. 527). By rule, "in determining whether a claimant is entitled to Social Security disability benefits, special weight is accorded opinions of the claimant's treating physician." *Black & Decker Disability Plan v. Nord*, 538 U.S. 822, 825 (2003); and in fact, the opinion of a treating source is entitled to *controlling* weight so long as it is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence." 20 C.F.R. § 404.1527(d)(2); *accord Bauer v. Astrue*, 532 F.3d 606, 608 (7th Cir. 2008).

The ALJ rejected the treating physician's opinion in this case, explaining that the assessment was not reliable because it failed to account for the heightened level of functioning Mr. Rutherford experiences when he is sober:

> As for the opinion evidence, given the obvious improvement the claimant has shown when sober and actively engaged in treatment, little weight is assigned the assessment of Sinnissippi psychiatrist Thomas Dennison who found the claimant markedly limited in several areas of work-related functioning.

(R. 17)

The problem with that explanation is that Mr. Rutherford achieved sobriety in December 2005, and Dr. Dennison completed his assessment almost four years later, on October 9, 2009. (R. 528). The assessment states that it is for the period of "12/10/06 to PRESENT." (R. 527). Because Dr. Dennison's assessment covers a time period in which Mr. Rutherford was sober, it was unreasonable for the ALJ to reject

the assessment on the grounds that it fails to account for "the obvious improvement the claimant has shown when sober and actively engaged in treatment." (R. 17).

Even assuming Mr. Rutherford had been abusing drugs or alcohol during the time period covered by the assessment, the ALJ cannot simply reject the opinion on that basis. He must first conduct what is referred to as a Regulation 404.1535 inquiry. Section 423(d)(2)(c) of the Social Security Act provides that "[a]n individual shall not be considered to be disabled for purposes of this subchapter if alcoholism or drug addiction would (but for this subparagraph) be a contributing factor material to the Commissioner's determination that the individual is disabled." 42 U.S.C.A. § 423(d)(2)(C). In determining whether a claimant's drug addiction is a contributing factor material to a determination of disability, ALJs are to follow Regulation 404.1535, which states in part:

> (1) The key factor we will examine in determining whether drug addiction or alcoholism is a contributing factor material to the determination of disability is whether we would still find you disabled if you stopped using drugs or alcohol.

> (2) In making this determination, we will evaluate which of your current physical and mental limitations, upon which we based our current disability determination, would remain if you stopped using drugs or alcohol and then determine whether any or all of your remaining limitations would be disabling.

>> (i) If we determine that your remaining limitations would not be disabling, we will find that your drug addiction or alcoholism is a contributing factor material to the determination of disability.

>> (ii) If we determine that your remaining limitations are disabling, you are disabled independent of your drug addiction or alcoholism and we will find that your drug addiction or alcoholism is not a contributing factor material to the determination of disability.

Thus, the ALJ must first determine whether the claimant is disabled under the five-step analysis before determining which physical or mental limitations would remain if the claimant stopped using drugs or alcohol. *Hart v. Astrue*, No. 11 C 0043, 2012 WL 639530, at *3 (N.D.Ind. Feb. 27, 2012); *Harlin v. Astrue*, 424 F. App'x 564, 567 (7th Cir. 2011). Here, the ALJ muddled the two distinct steps together, essentially reasoning that, because the drug abuse played a role in Mr. Rutherford's impairments, the impairments could not be considered disabling:

> Notably, his [Rutherford's] representative argues in his brief dated October 6, 2009 that the claimant's inability to work hinges primarily on his mental impairments which have plagued the claimant since long before the December 2006 head injury. However, a review of the record reflects that substance abuse may have played a significant role in this regard.

(R. 15) (internal citation omitted). The ALJ never evaluated which of Mr. Rutherford's impairments would remain if he stopped using drugs and alcohol, and thus there was no Regulation 404.1535 inquiry.

The determination of whether substance abuse contributes to Mr. Rutherford's disability was central to the ALJ's conclusion in this case. The ALJ's rejection of evidence tending to show that Mr. Rutherford was substantially impaired even when sober, especially when that evidence came from a treating physician, was erroneous. As was the ALJ's failure to conduct a Regulation 404.1535 inquiry.

## V. CONCLUSION

For the reasons stated above, and pursuant to 42 U.S.C. § 405(g), the ALJ's decision is reversed, and the case is remanded to the Commissioner for further proceedings consistent with this opinion.

E N T E R:

Dated: February 11, 2013

_____
MARY M. ROWLAND
United States Magistrate Judge